**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

KENNETH B. JACKSON,

      Petitioner,

v.                                        Case No. 8:16-cv-536-T-36TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Kenneth B. Jackson, a Florida inmate, timely filed a *pro se* amended petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 7) challenging his Hillsborough County conviction. Respondent filed a response (Dkt. 9), and Jackson filed a reply (Dkt. 14). After consideration, the amended petition will be denied.

### Procedural History

Jackson was convicted after a jury trial of one count of first degree murder and received a sentence of life imprisonment. (Dkt. 12, Ex. 27, pp. 141, 146). The state appellate court *per curiam* affirmed the conviction and sentence. (Dkt. 12, Ex. 24). Jackson filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 as well as numerous supplements and amendments. (Dkt. 12, Exs. 1b, 2-5, 7, 8, 10). The state postconviction court summarily denied some of Jackson's claims. (Dkt. 12, Exs. 5a, 10a, 13a). After conducting an evidentiary hearing on the remaining claims, the state postconviction court entered a final order of denial. (Dkt. 12, Exs. 15a, 16). The state appellate court *per curiam* affirmed the denial of relief. (Dkt. 12, Ex. 20).

**Factual Background; Jackson's Theory Of Defense**[1]

In December 2003, Christiana Brown rented a room in the house located at 2333 W. Chestnut Street in Tampa. The landlord, Daniel Aragon, lived at the house and rented another room to Joel Ruvalcaba-Mendoza. Petitioner Kenneth B. Jackson, whom Brown had recently started dating, regularly visited Brown at the house. Accordingly, Ruvalcaba-Mendoza became familiar with Jackson.

At about 5:30 or 6:00 p.m. on December 31, 2003, Ruvalcaba-Mendoza came home and saw an unidentified, heavyset man referred to as "the fat man" with Brown. At about 8:30 p.m., Aragon heard Jackson arguing with Brown and threatening to kill her if he saw her with anyone else. Aragon walked in to find Jackson holding a chair as if he was going to swing it at Brown.

Aragon and Ruvalcaba-Mendoza left the house separately later that night. Ruvalcaba-Mendoza walked to a bar and had two drinks. On his way home, he stopped and drank half a beer at a friend's house. Then, Ruvalcaba-Mendoza saw Brown and a man wearing a hooded sweatshirt arguing at the corner of W. Chestnut Street and N. Howard Avenue. He saw the man, whom he recognized as Jackson, holding a knife and stabbing Brown. When Ruvalcaba-Mendoza yelled, "Kenny!" Jackson made eye contact with Ruvalcaba-Mendoza and fled. Ruvalcaba-Mendoza went to a neighbor's house to call police.

Blood evidence at the scene indicated that Brown was stabbed near the northwest corner of W. Chestnut Street and N. Howard Avenue and that she walked westbound along W. Chestnut Street before crossing to the south side of the street and collapsing. The associate medical examiner determined that Brown's death was caused by a stab wound to her femoral artery that resulted in

---

[1] This summary is based on the trial transcript.

significant blood loss.  Police recovered a hooded sweatshirt from the scene.  DNA recovered from blood on the sweatshirt matched Brown's.  DNA obtained from skin cells on the sweatshirt's cuffs belonged to three donors.  Brown and Jackson could not be excluded as two of the donors,[2] but the third donor was unknown.  Ruvalcaba-Mendoza identified Jackson out of a police photopack on January 6, 2004.  When he was shown the photopack a second time in preparation for his grand jury testimony, Ruvalcaba-Mendoza again identified Jackson.[3]

Police learned that Jackson's sister purchased a one-way bus ticket to Youngstown, Ohio, on January 9, 2004.  When Deputy United States Marshals arrived at Jackson's cousin's home in Youngstown on January 13, 2004, Jackson jumped from the second story and fled.  After the Marshals apprehended him, he stated, "Aw, I knew they were going to try to pin that girl on me" and that he "just beat her up."  (Dkt. 12, Ex. 31, pp. 485, 495, 496).

Jackson testified at trial.  He maintained that he drove himself to Youngstown and that he left Tampa at approximately 5:00 p.m. on December 31, 2003.  He said that his sister arrived by bus sometime later.  Jackson denied any involvement in Brown's killing, and said that he never threatened her or argued with her.  While Jackson agreed that the sweatshirt recovered from the scene looked like his, he said that his sweatshirt had been in Brown's possession.  He stated that he ran from the Marshals because his sister told him about the murder and he was afraid of getting in trouble.  Jackson denied making the comments the Marshals attributed to him.  Jackson asserted that Brown was the victim of random violence, and that Ruvalcaba-Mendoza had misidentified him as the perpetrator.

---

[2]  Ruvalcaba-Mendoza testified that he previously had seen Brown wearing Jackson's sweatshirt.

[3] Some evidence suggested that Ruvalcaba-Mendoza expressed confusion the first time he saw the photopack. Ruvalcaba-Mendoza and Detective Aubrey Black both denied this at trial.

## Standard Of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). A decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. *See also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state

court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of postconviction relief without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir. 2002). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

### Ineffective Assistance Of Counsel

Jackson contends that his trial counsel was ineffective. Claims of ineffective assistance of counsel are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. To show deficient performance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. A court must consider whether, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment." *Id.* Jackson must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt.").

## Discussion

Ground One (labeled as Ground 4):

Jackson claims that counsel was ineffective in failing to identify the fat man and move for a court order to test the fat man's DNA. At the postconviction evidentiary hearing, Jackson testified that DNA testing would have shown that the fat man stabbed Brown. (Dkt. 12, Ex. 16, p. 3126). Trial counsel testified that Jackson never mentioned or identified the fat man, and that counsel only knew of the fat man from police reports. (*Id.*, p. 3109). Counsel stated that he did not have enough information to locate the fat man. (*Id.*, pp. 3075-76). Further, counsel testified, he did not want to develop another witness who might be able to place Jackson with the victim before her murder. (*Id.*, p. 3110). Counsel stated that he could not have requested a DNA test because, in addition to not knowing the fat man's identity, "there's no provision in Florida law for the defense to requesting

[sic] a Court for a witness to give a DNA sample." (*Id.*, p. 3076). The state court denied this claim:

> After reviewing the allegations, the testimony, evidence, and arguments presented at the February 27, 2014 evidentiary hearing, all pleadings, the court file, and the record, the Court finds [counsel]'s testimony to be more credible than that of Defendant. Therefore, the Court finds Defendant did not ask [counsel] to get a DNA sample from the Fat Man and did not ask him to request a court order to obtain a DNA sample of the Fat Man. Consequently, the Court finds Defendant cannot prove that [counsel] acted deficiently or any resulting prejudice when the identity of the Fat Man is still unknown, even by Defendant, and even if [counsel] had requested a court order to obtain a DNA sample of the Fat Man, the Court would have denied such request. As such, no relief is warranted.

(Dkt. 12, Ex. 15a, p. 2983).

Jackson has not shown either deficient performance or prejudice. Jackson does not overcome, by clear and convincing evidence, the presumption of correctness afforded to the state court's factual determination that counsel's testimony was credible. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct unless [the petitioner] rebuts the presumption by clear and convincing evidence.") (citing 28 U.S.C. § 2254(e)(1)). *See also Consalvo v. Sec'y, Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("Federal courts have no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them. We consider questions about the credibility and demeanor of a witness to be questions of fact.") (internal quotation marks and citations omitted).

According to the testimony the court found credible, counsel was not able to identify the fat man. Further, counsel had a reasonable basis for avoiding additional investigation. And Jackson has not presented facts or evidence in support of his contention that DNA testing would have established the fat man's guilt. *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient.") (citation omitted); *Tejada v.*

*Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (a petitioner's vague and conclusory statements, unsupported by specific facts, cannot sustain an ineffective assistance of counsel claim).

Finally, the state court's determination that any request for DNA testing would have been denied involves an application of state law to which this Court must defer. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *Will v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008) ("Although an ineffective-assistance-of-counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of *state* law, . . . we must defer to the state's construction of its own law.'") (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)). Jackson does not show that the denial of his claim involved an unreasonable application of *Strickland*. Nor does he demonstrate that the court's decision was based on an unreasonable factual determination.[4] Jackson is not entitled to relief on Ground One.

Ground Two (labeled as Ground 5):

The victim's fingernail clippings were provided to the Florida Department of Law Enforcement but were not tested for DNA. Jackson argues that counsel was ineffective in failing to obtain DNA testing on the fingernail clippings. At the postconviction evidentiary hearing,

---

[4] Counsel testified that a neighbor, Latonya Keaton, told the defense investigator that after the stabbing, a man matching Jackson's description approached Ruvalcaba-Mendoza and asked, "Why did you tell on me?" (Dkt. 12, Ex. 16, p. 3048). The state court's order mentioned counsel's testimony about Keaton's statement. (Dkt. 12, Ex. 15a, p. 2979). Jackson appears to argue that, by referencing Keaton's statement, the state court must have accepted its contents as true. Jackson claims that the statement is false and, therefore, the state court made the unreasonable factual determination that he approached and spoke to Ruvalcaba-Mendoza. (Dkt. 14, p. 2). But Jackson does not establish that the state court made any unreasonable factual determination, or even if it did, that its decision was "based" on such a determination. *See* 28 U.S.C. § 2254(d)(2). Keaton's statement was not relevant to resolving Jackson's claim about the fat man, and the state court merely addressed counsel's testimony about Keaton in describing the background of the case, including the evidence against Jackson and the scope of counsel's investigation. (Dkt. 12, Ex. 15a, pp. 2978-81).

Jackson testified that such tests would prove that someone else attacked Brown. (Dkt. 12, Ex. 16, p. 3127). Jackson points to the trial testimony of Dr. Jacqueline Lee, the associate medical examiner who conducted Brown's autopsy. Brown had stab wounds on her left hand, and Dr. Lee testified that any stab wound on an extremity could be a defensive wound. (Dkt. 12, Ex. 30, pp. 315-16). Jackson appears to suggest that Brown might have scratched her attacker while defending herself, resulting in the transfer of the attacker's DNA to her fingernails.

> Counsel testified that he did not want to risk creating evidence against Jackson:
>
> [Seeking DNA testing on the fingernail clippings] can only have a bad result. If [the State does not] present it . . . obviously if they had [it], they would have presented it. It's a the [sic] lack of evidence which can create a reasonable doubt. I'm not going to take the chance that it might create positive evidence for the State against Mr. Jackson. . . . I don't think it's a good idea. . . . I'm not going to attempt . . . to create evidence against a client. If the State doesn't want to look for that evidence, I'm not going to wake them up to that fact and say, hey, let's test the nail clippings, maybe it has Jackson's DNA.

(Dkt. 12, Ex. 16, pp. 3080-81).

> Counsel testified that he made a strategic choice not to seek DNA testing. (*Id.*, p. 3110).

The state court denied Jackson's claim:

> After reviewing the allegations, the testimony, evidence, and arguments presented at the February 27, 2014, evidentiary hearing, all pleadings, the court file, and the record, the Court finds [counsel]'s testimony to be more credible than that of Defendant. Therefore, the Court finds Defendant cannot prove that [counsel] acted deficiently or any resulting prejudice when [counsel] made a reasonable strategic decision not to have DNA testing done on the fingernail clippings for potential DNA because he did not want to create evidence for the State. The Court finds if Defendant's DNA was found under the victim's fingernails, it would not have supported the misidentification defense presented at trial. As such, no relief is warranted.

(Dkt. 12, Ex. 15a, pp. 2985-86).

The state court's determination that counsel made a strategic decision is a factual finding. *See DeBruce v. Comm'r, Ala. Dep't of Corr.*, 758 F.3d 1263, 1273 (11th Cir. 2014) (a question "regarding whether an attorney's decision is 'strategic' or 'tactical' is a question of fact."). Jackson does not overcome, by clear and convincing evidence, the presumption of correctness afforded to this finding. *See* 28 U.S.C. § 2254(e)(1). Because counsel made a strategic decision, the relevant question is whether that decision was reasonable. *See Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (stating that counsel's strategic decision "will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it.") (internal quotation marks and citation omitted); *Minton v. Sec'y, Dep't of Corr.*, 271 Fed. App'x 916, 918 (11th Cir. 2008) ("The Supreme Court has declined to articulate specific guidelines for appropriate attorney conduct and instead has emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.") (internal quotation marks and citation omitted).

Jackson does not show that counsel acted unreasonably in choosing not to pursue DNA testing that could have generated incriminating evidence. *See, e.g., Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014) ("[C]ounsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly. In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.") (internal quotation marks and citations omitted). Additionally, Jackson cannot establish ineffective assistance because he only speculates that an unknown person's

DNA was on the fingernail clippings.  *See Wilson*, 962 F.2d at 998; *Tejada*, 941 F.2d at 1559.  As

the state court's decision did not involve an unreasonable application of *Strickland* and was not

based on an unreasonable factual determination, Jackson cannot obtain relief on Ground Two.

Ground Three (labeled as Ground 9):

     Jackson argues that counsel was ineffective in failing to object to an inaccuracy in the

prosecutor's opening statement.  The prosecutor said:

> Mr. Ruvalcaba-Mendoza went to a few houses down where people were hanging
> outside – New Year's Eve Party – and he yelled for them to call 911.  Now Mr.
> Ruvalcaba-Mendoza and Christi[a]na Brown have lived just a few houses down,
> further on Chestnut.  That was their home where they resided.  They didn't have a
> phone, so that's why Mr. Ruvalcaba-Mendoza had went to the next-door neighbors
> to call 911.

(Dkt. 12, Ex. 29, p. 164).

     Jackson claims that "this argument place[d] Ruvalcaba[-Mendoza] in a false light" because

"where [Ruvalcaba-Mendoza] live[d] there was a phone."  (Dkt. 7, p. 8).  The state court summarily

denied this ground:

> After reviewing the allegations, the State's response, the court file, and the record,
> the Court finds opening statements "are not evidence, and the purpose of opening
> argument is to outline what an attorney expects to be established by the evidence."
> *Occhicone v. State*, 570 So. 2d 902, 904 (Fla. 1990) (*citing Whitted v. State*, 362 So.
> 2d 668 (Fla. 1978)).  The Court further finds the "control of the comments is within
> the trial court's discretion."  *Occhicone*, 570 So. 2d at 904.  The Court finds the
> alleged prosecutor's comments were not improper as they were an outline of what
> the prosecutor expected to be established by the evidence.  Consequently, the Court
> finds Defendant cannot demonstrate that counsel acted deficiently in failing to object
> to the alleged comments during the State's opening statement . . . when the alleged
> comments were proper.  As such, no relief is warranted.

(Dkt. 12, Ex. 13a, pp. 2504-05).

     As the state court addressed, attorneys use opening statements to set out what they expect

the evidence to show.  *See United States v. Lizon-Barias*, 252 Fed. App'x 976, 978 (11th Cir. 2007)

("An opening statement gives counsel the opportunity to state what evidence will be presented in order to make it easier for the jurors to understand what is to follow."). Jackson has not established that counsel had any reason to believe the prosecutor did not anticipate evidence on this matter. And evidence introduced at trial indicated that Ruvalcaba-Mendoza did not personally have a phone in his residence. (Dkt. 12, Ex. 29, pp. 201-02). Accordingly, Jackson fails to show that the prosecutor's comment was improper or that counsel had a basis to object. Because the state court did not unreasonably apply *Strickland* or unreasonably determine the facts in denying his claim, Jackson cannot show entitlement to relief on Ground Three.

Ground Four (labeled as Ground 10):

Aubrey Black was the lead detective in this case. Jackson claims that counsel was ineffective in failing to impeach Detective Black to "cast doubt in the minds of the jury about the integrity of [Detective] Black[']s investigation." (Dkt. 7, p. 10). Jackson focuses on two matters.

First, Detective Black noted in his supplemental report that Ruvalcaba-Mendoza "followed" the victim when he saw the attack. Specifically, the supplemental report states that Ruvalcaba-Mendoza "followed this female until she fell, approximately about two hundred feet further to the west, and then he called to neighbors to have 911 called so that emergency units could respond" and again describes how Ruvalcaba-Mendoza "followed the victim and observed her fall into the grassy front yard area in front of 2318 W. Chestnut." (Dkt. 12, Ex. 1b, pp. 125, 128). Jackson suggests that "following" the victim was a suspicious reaction that "[made] no sense." (Dkt. 12, Ex. 16, p. 3131-32). Accordingly, Jackson claims, counsel should have asked Detective Black why he did not question Ruvalcaba-Mendoza further about his following the victim. Counsel testified that he took the supplemental report to mean that Ruvalcaba-Mendoza simply followed Brown's path after the

attack, rather than indicating that Ruvalcaba-Mendoza did anything wrong or was stalking her. (*Id.*, p. 3112). And counsel noted that it would be improper to question Detective Black about what Ruvalcaba-Mendoza said, whether Ruvalcaba-Mendoza was credible, or whether Ruvalcaba-Mendoza's reaction was normal. (*Id.*, pp. 3113-14).

In addition, Detective Black's supplemental report states that Ruvalcaba-Mendoza described Jackson as "wearing dark colored work clothing." (Dkt. 12, Ex. 1b, p. 128). Jackson argues that counsel should have cross-examined Detective Black about whether he tried to obtain Jackson's work clothing. Jackson believed that the victim's blood would have been on his clothes if he had killed her during a "close altercation," but that DNA testing would reveal no blood. (Dkt. 12, Ex. 16, p. 3144). Counsel testified at the evidentiary hearing that the work clothing was irrelevant to the case. (*Id.*, p. 3095). The state court denied this claim:

> After reviewing the allegations, the testimony, evidence, and arguments presented at the February 27, 2014, evidentiary hearing, all pleadings, the court file, and the record, the Court, relying on *Patton v. State*, 878 So. 2d 368 (Fla. 2004), *Armstrong v. State*, 429 So. 2d 287 (Fla. 1983), finds failure to impeach witnesses are matters of trial tactics and strategy and counsel cannot be deemed ineffective merely because current counsel disagrees with the trial counsel's strategic decisions. The Court finds [counsel]'s testimony to be more credible than that of Defendant. Therefore, the Court finds Defendant cannot prove that [counsel] acted deficiently or any resulting prejudice when [counsel] did cross-examine Detective Black and made reasonable strategic decisions when conducting said cross-examination, including decisions involving impeachment issues. The Court further finds even if this Court were to find that [counsel] acted deficiently, his actions or inactions would not have changed the outcome of the trial based on Mr. Ruvalcaba[-Mendoza]'s eyewitness testimony that he saw Defendant stabbing the victim and the fact that Defendant's sweatshirt, containing his DNA, was found at the crime scene with the victim's blood on it. As such, no relief is warranted.

(Dkt. 12, Ex. 15a, pp. 2987-88).

Cross-examination of a witness is a matter of trial strategy. *See Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) ("The decision as to whether to cross-examine a witness is 'a tactical

one well within the discretion of a defense attorney.'" (quoting *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985))). Accordingly, Jackson must show that his counsel's strategic decision not to cross-examine Detective Black as Jackson suggests was unreasonable. *See Dingle*, 480 F.3d at 1099; *Minton*, 271 Fed. App'x at 918.

Jackson fails to meet this burden. From the police report, it appears that Ruvalcaba-Mendoza observed the attack, proceeded in the same direction as the victim, and quickly sought help after she collapsed. Therefore, counsel reasonably could have concluded that Ruvalcaba-Mendoza's "following" the victim was not significant. Additionally, Jackson presents no evidence that an examination of his work clothes would have resulted in any relevant information. Accordingly, even if Detective Black admitted on cross-examination that he did not scrutinize Ruvalcaba-Mendoza's reaction or attempt to obtain Jackson's work clothes, Jackson fails to show a reasonable probability that such admissions would have changed the outcome at trial. Jackson does not establish that the state court's denial of his claim involved an unreasonable application of *Strickland* or was based on an unreasonable determination of fact. He is not entitled to relief on Ground Four.

Ground Five (labeled as Ground twelve-45):

Jackson contends that counsel was ineffective in failing to impeach Ruvalcaba-Mendoza about his "following" the victim. Jackson testified that questioning Ruvalcaba-Mendoza would have cast doubt on his logic and actions and shown him to be dishonest and untrustworthy. (Dkt. 12, Ex. 16, p. 3136). Additionally, Jackson testified that he wanted counsel to ask Ruvalcaba-Mendoza why he did not follow the perpetrator, or, alternatively, why he did not call 911 immediately. (*Id.*, pp. 3131-32, 3137). As addressed, counsel stated that he did not think Ruvalcaba-Mendoza's having followed the victim revealed anything suspicious, but merely

indicated that he traveled along the same path as the victim after the attack. (*Id.*, p. 3112).

The state court denied this claim:

> After reviewing the allegations, the testimony, evidence, and arguments presented at the February 27, 2014, evidentiary hearing, all pleadings, the court file, and the record, the Court finds [counsel]'s testimony to be more credible than that of Defendant. Therefore, the Court finds Defendant cannot prove that [counsel] acted deficiently or any resulting prejudice when [counsel] failed to cross-examine Ruvalcaba[-Mendoza] regarding following Ms. Brown when there was no good faith basis to do so based on the fact that it was apparent that Ruvalcaba[-Mendoza] did not stalk Ms. Brown, and any such inquiry would not have changed the outcome of the trial based on Ruvalcaba[-Mendoza]'s eyewitness testimony that he saw Defendant stabbing the victim and the fact that Defendant's sweatshirt, containing his DNA, was found at the crime scene with the victim's blood on it. As such, no relief is warranted.

(Dkt. 12, Ex. 15a, p. 2990).

Counsel reasonably chose not to cross-examine Ruvalcaba-Mendoza about whether he followed the victim or immediately called 911. As addressed above, counsel reasonably could have determined from the police report that Ruvalcaba-Mendoza simply walked in the same direction as the victim and then acted to contact police. Nor does Jackson show that counsel acted unreasonably in declining to ask Ruvalcaba-Mendoza why he did not follow the attacker, in light of Ruvalcaba-Mendoza's recognition of Jackson. Further, as the state court found, there is no reasonable probability that questioning Ruvalcaba-Mendoza on this matter would have resulted in a different outcome at trial considering the evidence of guilt. Jackson does not show that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. He is not entitled to relief on Ground Five.

Ground Six (labeled as Ground twelve-46):

Jackson claims that counsel was ineffective in failing to cross-examine Ruvalcaba-Mendoza about the 911 call. Ruvalcaba-Mendoza testified that he went to a neighbor's house to call 911.

(Dkt. 12, Ex. 29, p. 188). But a report prepared by the defense investigator states the 911 call was made from 2333 W. Chestnut Street, the address where Ruvalcaba-Mendoza lived. (Dkt. 12, Ex. 2, p. 202). At the evidentiary hearing, Jackson testified that cross-examining Ruvalcaba-Mendoza about this discrepancy would have damaged his credibility. (Dkt. 12, Ex. 16, p. 3174). Counsel testified, however, that his investigation clearly established that a neighbor, Latonya Keaton, called 911. (*Id.*, p. 3095). Counsel also stated that the location from which the 911 call was placed was not relevant to the defense. (*Id.*, p. 3115).

The state court denied this claim:

> After reviewing the allegations, the testimony, evidence, and arguments presented at the February 27, 2014, evidentiary hearing, all pleadings, the court file, and the record, the Court finds [counsel]'s testimony to be more credible than that of Defendant. Therefore, the Court finds Defendant cannot prove that [counsel] acted deficiently or any resulting prejudice when [counsel] failed to cross-examine Ruvalcaba[-Mendoza] regarding where he said the 911 call was made from when [counsel] made a reasonable strategic decision not to cross-examine on where the call was actually made from because that was something the defense knew more about than the State or the police knew, any such inquiry would not have changed the outcome of the trial based on Ruvalcaba[-Mendoza]'s eyewitness testimony that he saw Defendant stabbing the victim and the fact that Defendant's sweatshirt, containing his DNA, was found at the crime scene with the victim's blood on it.

(Dkt. 12, Ex. 15a, p. 2992).

Jackson has not overcome, by clear and convincing evidence, the presumption of correctness afforded to the state court's factual determination that counsel was credible. *See Rolling*, 438 F.3d at 1301; *Consalvo*, 664 F.3d at 845. And, as addressed, counsel's decision about cross-examination was a strategic one. *See Fugate*, 261 F.3d at 1219. Jackson fails to show that counsel acted unreasonably in making the tactical decision not to cross-examine Ruvalcaba-Mendoza about any inconsistencies regarding the 911 call. The location of the call was not relevant to the misidentification defense, and counsel believed it was "clear[]" from his investigation that the call

was made from a neighbor's house.[5]

Additionally, counsel challenged Ruvalcaba-Mendoza's credibility on other bases, including 1) Ruvalcaba-Mendoza's ability to observe the attacker at nighttime, after he had consumed alcohol (Dkt. 12, Ex. 29, pp. 199-200, 202-03; Ex. 31, pp. 586, 592, 594); 2) Ruvalcaba-Mendoza's recollection of the incident in light of his inconsistent statements about how close he came to Brown and whether he may have been confused the first time he saw the photopack (Dkt. 12, Ex. 29, pp. 203-06, 215-18; Ex. 31, pp. 589-91) and 3) Ruvalcaba-Mendoza's potential motive to implicate Jackson based on Ruvalcaba-Mendoza's alleged romantic interest in Brown. (Dkt. 12, Ex. 30, p. 282; Ex. 31, p. 587). Finally, Jackson has failed to show prejudice as a result of counsel's decision not to cross-examine Ruvalcaba-Mendoza on this matter given the State's evidence of guilt. As Jackson has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim, he is not entitled to relief on Ground Six.

Ground Seven (labeled as Ground 17):

As addressed, Detective Black's supplemental police report states that Ruvalcaba-Mendoza observed the attacker wearing work clothing. (Dkt. 12, Ex. 1b, p. 128). Jackson claims that counsel was ineffective in failing to obtain his work clothing for testing to prove the absence of blood. Counsel did not recall Jackson asking him to obtain Jackson's work clothing. (Dkt. 12, Ex. 16, pp. 3095-96). And he testified that he did not want to test the clothing and potentially uncover incriminating evidence. (*Id.*, pp. 3095, 3116-17). Counsel also noted that, considering the time between the crime and Jackson's arrest, Jackson could have disposed of or washed any clothing.

---

[5] The state court's order referenced the defense having more knowledge of the 911 call than the State. (Dkt. 12, Ex. 15a, p. 2992). Counsel testified that Keaton apparently did not disclose to the police that, as Ruvalcaba-Mendoza summoned her to call 911, a man matching Jackson's description asked Ruvalcaba-Mendoza why he told on him. (Dkt. 12, Ex. 16, pp. 3099-3101).

(*Id.*, pp. 3116-17). The state court denied Jackson's claim:

> After reviewing the allegations, the testimony, evidence, and arguments presented at the February 27, 2014, evidentiary hearing, all pleadings, the court file, and the record, the Court finds [counsel]'s testimony to be more credible than that of Defendant. Therefore, the Court finds Defendant did not ask [counsel] to get his work clothes tested for DNA. Consequently, the Court finds Defendant cannot prove that [counsel] acted deficiently or any resulting prejudice as a result of [counsel]'s alleged failure to secure Defendant's work clothing for DNA testing when the work clothes were not relevant, could have possibly turned up DNA evidence damaging to Defendant's case, and still have not been produced or DNA tested with exonerating results. As such, no relief is warranted.

(Dkt. 12, Ex. 15a, p. 2994).

Jackson has not established that counsel performed deficiently in failing to retrieve and test Jackson's work clothes. Counsel reasonably decided not to risk producing unfavorable evidence. *See Hittson*, 759 F.3d at 1267. Further, Jackson's conclusory claim is not supported by any facts or evidence. *See Wilson*, 962 F.2d at 998; *Tejada*, 941 F.2d at 1559. And, as counsel's testimony suggests, even if the clothes did not yield any DNA, the State potentially could have argued that there was no way to establish when Jackson wore those particular clothes or that he did not wash them after the crime. Under these circumstances, counsel did not provide ineffective assistance in not obtaining and testing the clothes. Accordingly, Jackson fails to show that the state court's denial of his claim involved an unreasonable application of *Strickland* or was based on an unreasonable determination of fact. He is not entitled to relief on Ground Seven.

Ground Eight (labeled as Ground 18):

Although a sweatshirt was found at the scene, Ruvalcaba-Mendoza testified that he did not see the attacker remove his sweatshirt. (Dkt. 12, Ex. 29, pp. 208-09). Jackson contends, however, that if Ruvalcaba-Mendoza was as close to the scene as he claimed, it would have been impossible for him not to have observed the attacker remove the sweatshirt. Jackson claims that counsel should

have made this point by cross-examining Ruvalcaba-Mendoza using a diagram of the scene drawn to scale. (Dkt. 12, Ex. 16, p. 3150).[6] Counsel testified that he did not believe addressing this matter with the use of a diagram would have made a difference in the outcome of the trial. (Dkt. 12, Ex. 16, pp. 3107, 3117-18).

> The state court denied this claim:
>
> After reviewing the allegations, the testimony, evidence, and arguments presented at the February 27, 2014, evidentiary hearing, all pleadings, the court file, and the record, the Court, relying on *Patton v. State*, 878 So. 2d 368 (Fla. 2004), *Armstrong v. State*, 429 So. 2d 287 (Fla. 1983), finds failure to impeach witnesses are matters of trial tactics and strategy and counsel cannot be deemed ineffective merely because current counsel disagrees with the trial counsel's strategic decisions. The Court finds [counsel]'s testimony to be more credible than that of Defendant. Therefore, the Court finds Defendant cannot prove that [counsel] acted deficiently or any resulting prejudice when [counsel] did impeach Ruvalcaba[-Mendoza] regarding his ability to see, including the lighting and darkness at the time, and made reasonable strategic decisions when conducting said cross-examination, including decisions involving impeachment issues. The Court further finds even if [counsel] had impeached Mr. Ruvalcaba-Mendoza, Detective Black, and Officer Fields with the fact that Defendant never left the sweatshirt or questioned them about somebody else putting the sweatshirt at the scene of the crime such would not have changed the outcome of the trial based on the testimony that Ruvalcaba[-Mendoza] saw Defendant stabbing the victim and the fact that Defendant's sweatshirt, containing his DNA, was found at the crime scene with the victim's blood on it. As such, no relief is warranted.

(Dkt. 12, Ex. 15a, p. 2996).

Counsel's choice not to cross-examine Ruvalcaba-Mendoza about the sweatshirt using a different diagram was not unreasonable. As the state court found, Jackson has not shown a reasonable probability of a different outcome had counsel cross-examined Ruvalcaba-Mendoza as Jackson suggests. Further, counsel argued that Ruvalcaba-Mendoza's claim not to have seen the attacker remove the sweatshirt was incredible and that his entire recollection–including his

---

[6] The State utilized Officer Deanna Mullins's hand-drawn diagram of the scene. The diagram contained a notation that it was not drawn to scale. (Dkt. 12, Ex. 1b, p. 147; Ex. 29, pp. 229-30)

testimony that the attacker was in fact wearing the sweatshirt and his identification of Jackson–was untrustworthy.[7] Jackson does not meet his burden of demonstrating that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground Eight.

Ground Nine (labeled as Ground 19):

When Officer Fields responded to the 911 call, a group of people had gathered at the crime scene. (Dkt. 12, Ex. 29, pp. 242-43). Jackson contends that counsel was ineffective in failing to locate these witnesses because "the[ir] testimony would cast doubt in the minds of the jury regarding the petitioner['s] guilt." (Dkt. 7, p. 17). Jackson testified at the evidentiary hearing that he did not believe the witnesses would have identified him as the perpetrator. (Dkt. 12, Ex. 16, p. 3183). But

---

[7] Counsel asserted during closing argument:

[I]f the attacker was wearing the sweatshirt, how did it wind up right there when Ruvalcaba[-Mendoza] says it's never taken off? . . . I submit that . . . [Brown] may have been carrying this, she may have been wearing it. . .

[S]he certainly could have been carrying it over her arm and dropped it right next to where she was stabbed.

We know from [the crime laboratory analyst] the blood was on both sides of the sweatshirt; the inside and the outside. Well, how could the attacker have gotten her blood on the inside of his sweatshirt if he was wearing it? Because the attacker wasn't wearing it. Ruvalcaba[-Mendoza]'s wrong about that, just like he's wrong about his ID of Kenny Jackson.

If Ruvalcaba[-Mendoza]'s right – if you really believe this – that the attacker was wearing that sweatshirt and therefore must be Kenny Jackson, what did the attacker do? What would he have to do to remove the sweatshirt? Put the knife down. Taken the sweatshirt off. Do you really think that he put the knife down, took off the sweatshirt, dropped it and picked the knife up, and ran? There was no evidence of that in the case. Ruvalcaba[-Mendoza]'s just wrong.

[Y]our common sense tells you . . . her attacker wasn't wearing [the sweatshirt].

[H]ow do you wear a long-sleeved sweatshirt and stab someone and not get blood on the wrist? Well, there's a very simple explanation. You don't wear it. Because Ruvalcaba[-Mendoza] was wrong, just like he's wrong about his ID of Kenny Jackson.

(Dkt. 12, Ex. 31, pp. 596- 98; Ex. 32, p. 606).

counsel testified that he did not want to investigate other witnesses because they might have identified Jackson in court. (*Id.*, p. 3099). Counsel explained that he especially did not want to do this "when [he] had a one witness case." (*Id.*). The state court denied Jackson's claim:

> After reviewing the allegations, the testimony, evidence, and arguments presented at the February 27, 2014, evidentiary hearing, all pleadings, the court file, and the record, the Court finds [counsel]'s testimony to be more credible than that of Defendant. Therefore, the Court finds Defendant cannot prove that [counsel] acted deficiently or any resulting prejudice when [counsel] made a strategic decision not to attempt to locate any more witnesses that could identify Defendant as the murderer, and the location of any additional witnesses who could place Defendant at the crime scene would have been detrimental to their misidentification defense. As such, no relief is warranted.

(Dkt. 12, Ex. 15a, p. 3000).

Counsel made a reasonable choice not to risk uncovering damaging testimony from these prospective witnesses. *See Hittson*, 759 F.3d at 1267. Further, given the lack of evidence about these prospective witnesses' testimony, Jackson's claim is too speculative to establish that counsel was ineffective. *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985)). And, as counsel's testimony indicates, counsel was able to challenge the testimony of Ruvalcaba-Mendoza–the only State witness who placed Jackson at the scene–on multiple bases. Jackson does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground Nine.

Ground Ten (labeled as Ground 23):

Jackson asserts that counsel was ineffective in failing to cross-examine Ruvalcaba-Mendoza

about his immigration status. Jackson contends that, "had the jury been aware of Ruvalcaba[-Mendoza]'s status the jury would [have] decided Ruvalcaba[-Mendoza] had a motive (fear of deportation) to testify falsely against the Petitioner." (Dkt. 7, p. 19).

At the postconviction evidentiary hearing, counsel described Ruvalcaba-Mendoza's deposition testimony that he was a legal resident of the United States and was in the process of attaining citizenship. (Dkt. 12, Ex. 16, p. 3102). Counsel said that he had no reason to believe Ruvalcaba-Mendoza was testifying for the State in return for preferential treatment, and that there was no evidence Ruvalcaba-Mendoza faced deportation. (*Id.*, p. 3120). And the postconviction court stated that cross-examination regarding Ruvalcaba-Mendoza's immigration status would "never" be permitted. (*Id.*, p. 3102). Accordingly, the state court denied Jackson's claim:

> After reviewing the allegations, the testimony, evidence, and arguments presented at the February 27, 2014, evidentiary hearing, all pleadings, the court file, and the record, the Court finds Defendant cannot prove that [counsel] acted deficiently or any resulting prejudice when such impeachment would have been improper and the Court would not have allowed inquiry into such an area. As such, no relief is warranted.

(Dkt. 12, Ex. 16, p. 3002).

Jackson cannot show that counsel was ineffective. Jackson presents no evidence that Ruvalcaba-Mendoza benefitted from his testimony or that counsel had any reason to believe this to be the case. *See Wilson*, 962 F.2d at 998; *Tejada*, 941 F.2d at 1559. Additionally, the state court's conclusion that Jackson's proposed questioning would have been prohibited involves an interpretation of state evidentiary law that must be afforded deference. *See Richey*, 546 U.S. at 76; *Will*, 278 Fed. App'x at 908. Accordingly, Jackson has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground Ten.

Ground Eleven (labeled as Ground 27):

Jackson alleges that counsel was ineffective for telling Jackson to testify untruthfully, and threatening to terminate his representation if Jackson refused. (Dkt. 12, Ex. 16, pp. 3186-88). Counsel denied these allegations at the evidentiary hearing, stating that he "absolutely" did not tell Jackson to lie. (*Id.*, pp. 3063, 3122). The state court denied Jackson's claim:

> After reviewing the allegations, the testimony, evidence, and arguments presented at the February 27, 2014, evidentiary hearing, all pleadings, the court file, and the record, the Court finds [counsel]'s testimony to be more credible than that of Defendant. Therefore, the Court finds Defendant cannot prove that [counsel] acted deficiently or any resulting prejudice when [counsel] did not conspire with Defendant to commit perjury on the stand by refusing representation. As such, no relief is warranted.

(Dkt. 12, Ex. 15a, pp. 3006-07).

Jackson fails to show, by clear and convincing evidence, that the state court erred in its factual determination that counsel's testimony was credible. *See Rolling*, 438 F.3d at 1301; *Consalvo*, 664 F.3d at 845. Because counsel's testimony refutes Jackson's allegation, Jackson cannot establish ineffective assistance. The state court's denial of his claim did not involve an unreasonable application of *Strickland*, nor was it based on an unreasonable factual determination. Jackson is not entitled to relief on Ground Eleven.

Grounds Twelve, Thirteen, And Fourteen (labeled as Ground 29 and Ground 29 in part):

Jackson claims that counsel was ineffective in failing to impeach Ruvalcaba-Mendoza, Detective Black, and Officer Mullins about crime scene photographs showing bloodied impressions of bare feet.[8] Jackson asserts that the photographs cast doubt on these witnesses' testimony about the location and details of the attack.

---

[8] Evidence at trial indicated that Brown kicked off her shoes as she walked away from the location of the attack and continued barefoot for a time before falling to the ground. (Dkt. 12, Ex. 30, pp. 267-68, 362-66).

Jackson's claims are procedurally defaulted. Jackson presented these claims to the state postconviction court in a supplement to his postconviction motion. (Dkt. 12, Ex. 8, pp. 1560-64). The state court dismissed the claims as untimely:

> In claim twenty-nine of his October 13, 2009, "notice of supplemental authority," Defendant [raises the identified claims]. . . . However, the Court finds "[a] trial court may properly deny an amended rule 3.850 motion as untimely when it raises new claims and is filed outside of the two-year time period." *Lanier v. State*, 826 So. 2d 460, 461 (Fla. 1st DCA 2002). Defendant's allegations constitute new claims and are not an enlargement of any claims raised in his other timely rule 3.850 pleadings. . . . Defendant has failed to demonstrate entitlement to any of rule 3.850(b)'s exceptions [to the timeliness requirement].

(Dkt. 12, Ex. 10a, pp. 1938-39).

If a state court's rejection of a federal constitutional claim is based on an "independent and adequate" state procedural ground, federal review of the claim is barred. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). *See also Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir.2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."). A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion" or in a "manifestly unfair manner." *Judd*, 250 F.3d at 1313 (citing *Card v. Dugger*, 911 F.2d 1494 (11th Cir. 1990)).

To be considered adequate, a rule must be firmly established and regularly followed. *Lee v. Kemna*, 534 U.S. 362, 376 (2002). Florida courts have held that a postconviction claim that is raised for the first time in an untimely motion, and that does not relate back to a timely-filed

postconviction claim, may be denied as untimely. *See Lanier*, 826 So.2d at 461; *see also Johnson v. State*, 247 So.3d 698, 699 (Fla. 1st DCA 2018) ("Because Appellant's new [postconviction] claims do not relate back to the claims raised in his original timely filed [postconviction] motion, the amended motion is time barred."); *Surinach v. State*, 110 So.3d 95, 95 (Fla. 2d DCA 2013) ("Amended motions for postconviction relief are subject to the two-year time limit for filing rule 3.850 motions unless they merely enlarge an issue or issues raised in the original motion.").

The state court's resolution of Jackson's claims on an independent and adequate state bar results in a procedural default. Therefore, the claims can only be considered if Jackson establishes that either the cause and prejudice or fundamental miscarriage of justice exception applies to overcome the default. *See Harris v. Reed*, 489 U.S. 255, 262 (1989) ("[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show" one of these exceptions). Jackson has not argued or established that the cause and prejudice exception applies. In his reply, Jackson appears to invoke the fundamental miscarriage of justice exception.

A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). This exception requires a petitioner's "actual" innocence, rather than mere legal insufficiency. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). Such a "claim of innocence is . . . 'not itself a constitutional claim, but instead a gateway through which a petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Schlup*, 513 U.S. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). "To be credible, . . . a claim [of actual innocence] requires petitioner to support his allegations of constitutional error

with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Id*. at 325. Jackson has not presented any new, reliable evidence of his actual innocence. Accordingly, he fails to establish that the fundamental miscarriage of justice exception applies to excuse the default. Grounds Twelve, Thirteen, and Fourteen are barred from review.

Additional Ground In Amended Federal Habeas Petition

Jackson argues, without specifically enumerating another ground for relief, that the state postconviction court erred in denying his request to discharge his appointed postconviction counsel. (Dkt. 7, pp. 25-26). This claim is not cognizable on federal habeas review because it does not attack the validity of Jackson's criminal conviction. *See Carroll v. Sec'y, Dep't of Corr.*, 574 F.3d 1354, 1365 (11th Cir. 2009) ("[D]efects in state collateral proceedings do not provide a basis for habeas relief . . . The reasoning behind this well-established principle is straightforward: a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment–*i.e.,* the conviction itself–and thus habeas relief is not an appropriate remedy."). Accordingly, Jackson's claim cannot provide relief.

Additional Ground In Reply

In his reply, Jackson argues for the first time that counsel was ineffective in failing to advise him why it was not in his best interest to testify. Jackson may not bring a new claim in his reply. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court.") (citations omitted).

Even if the claim was properly before the Court, Jackson would not be entitled to relief. At trial, the parties stipulated to the identity of victim Christiana Brown. (Dkt. 12, Ex. 30, p. 400).

Jackson claims that counsel should have advised him not to testify in light of the stipulation. The state court denied this claim, finding that counsel was not ineffective because, contrary to Jackson's argument, his testimony did not "support" the stipulation. (Dkt. 12, Ex. 16, p. 3002). Jackson does not show that this decision involved an unreasonable application of *Strickland*, or that it was based on an unreasonable factual determination. It is not apparent why counsel should have advised him not to testify in light of the stipulation. The stipulation only provided that the victim was Christiana Brown; that she died on December 31, 2003; and that she died in Tampa, in Hillsborough County, Florida. None of these facts was disputed in this case,[9] and the stipulation did not involve any admission of guilt. Accordingly, Jackson fails to show that his attorney performed deficiently or that he suffered resulting prejudice. He is not entitled to relief on the claim raised in his reply.

Any of Jackson's claims not specifically addressed in this Order have been determined to be without merit.

Accordingly, it is **ORDERED** that:

1. Jackson's amended petition (Dkt. 7) is DENIED.

2. The Clerk is directed enter judgment against Jackson and close this case.

3. Jackson is not entitled to a certificate of appealability ("COA"). A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A COA must first issue. *Id*. "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2). To make such a showing, Jackson "must demonstrate that reasonable jurists would find the district court's

_____

[9] Counsel testified that the stipulation was advantageous because it relieved the State of having to prove the victim's identity and "we don't want . . . the state attorney[ ] to be able to bring in a relative of Ms. Brown's and identify a photo of her and perhaps get a little weepy and upset and create more prejudice against the defendant." (Dkt. 12, Ex. 16, p. 3122).

assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  Jackson has not made this showing.  Because Jackson is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on March 26, 2019.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Kenneth B. Jackson
Counsel of Record